4. <u>Termination of Hedge; Application of Rate Lock Payment.</u> (a) The Rate determined hereunder shall remain available to Borrower with respect to any Loan which may be made by Lender pursuant to the terms of the Letter until the earliest to occur of (i) the Rate Lock Expiration Date set forth on Schedule 1; (ii) Borrower's failure to accept a Commitment issued by Lender; (iii) Lender's determination that no Commitment will be issued; (iv) the termination of any Commitment issued by Lender and accepted by Borrower in accordance with the Letter and (v) Borrower's failure to comply with its obligations under this Agreement. Lender shall have the right to terminate the Hedges at any time following the occurrence of any of the foregoing. Borrower shall not have the right to require the termination of any Hedge. Any election with respect to whether to terminate a Hedge shall be made by Lender in its sole and absolute discretion and Lender shall have no liability to Borrower on account of any such election.

(b) If the Rate is determined in accordance with this Agreement, all Rate Lock Payments shall constitute the property of Lender and shall not be refundable to Borrower under any circumstances. Notwithstanding the foregoing, in the event that (1) every Hedge has been terminated and Borrower has not failed to either accept a Commitment issued by Lender without modifications to the terms of the Letter or use good faith, commercially reasonable efforts to close the Loan or (2) the Loan has closed prior to the termination of every Hedge, Lender shall pay to Borrower an amount equal to all Rate Lock Payments theretofore paid by Borrower less any Hedge Losses incurred by Lender or its affiliates and any amounts owed to Lender hereunder or under the Letter. In the event that any Hedge Losses incurred by Lender or its affiliates and any amounts owed to Lender hereunder or under the Letter exceed the Rate Lock Payments received by Lender prior to the termination of any Hedge, Borrower shall pay such excess amount to Lender within one (1) Business Day of Lender's demand.

(c) As used herein, "Hedge Losses" shall mean all losses, costs, damages and expenses incurred by Lender and/or its affiliates in connection with the maintenance or termination of all or any portion of any Hedge or Hedges entered into by them in connection with a determination of the Rate pursuant to this Agreement.

5. <u>Effect on Letter</u>. (a) Borrower acknowledges that this Agreement, any determination of the Rate or any payment of amounts pursuant to this Agreement shall not constitute (i) a modification of the Letter (except to the extent specifically set forth on Schedule 1), (ii) a Commitment or other obligation to make the Loan or any other loan to Borrower or (iii) the extension or reinstatement of any Commitment.

(b) Lender or its affiliates shall have the right to enter into one or more Hedges at the time of determination of the Rate based on any assumed Loan Amount selected by Lender. In the event the Loan Amount finally determined by Lender is less than the Loan Amount utilized by Lender in connection with the Hedge(s), Lender shall have the right at any time to terminate such portion of any Hedge(s) as Lender shall determine to be unnecessary for such reduced Loan Amount; however, Borrower shall have no right whatsoever to require the termination of any Hedge. Any election with respect to whether to terminate a Hedge shall be made by Lender in the exercise of its sole discretion and Lender shall have no liability to Borrower on account of any such election. In the event Lender determines that the actual Loan Amount shall be greater than the Loan Amount initially assumed by Lender, Lender and Borrower shall determine the

Rate with respect to such excess Loan Amount in accordance with the procedures described in Section 3 hereof, and Lender or its affiliates shall be authorized to enter into a new Hedge or Hedges with respect to such additional Loan Amount. In such case, all references herein to the "Rate" shall be the weighted average of all Rates determined in accordance with the terms hereof.

6. <u>Termination of this Agreement</u>. Either party may cancel this Agreement upon notice to the other party at any time prior to the determination of the Rate in accordance with the terms hereof. No notice of cancellation shall be effective against Lender if Lender or any of its affiliates has prior to its receipt of such cancellation notice, in good faith, entered in any Hedge in reliance of a Determination Notice which has been previously submitted by Borrower or Borrower's oral acceptance of any quote provided by Lender in accordance with Section 3. Borrower shall not submit any Determination Notice or request any quotes of the Rate after sending a notice of cancellation. Lender shall refund the entire Rate Lock Deposit to Borrower within five (5) Business Days of the cancellation of this Agreement in accordance with the terms of this Section 6.

7. <u>Notices</u>. Except as set forth herein with respect to Determination Notices, all notices, requests, and other communications to any party hereunder shall be in writing and shall be given to such party at its address or facsimile number set forth on the signature page hereof. Each such notice, request, or other communication shall be effective (i) when delivered personally, (ii) if given by facsimile, when such facsimile is transmitted to the specified facsimile number for the recipient set forth herein, (iii) if given by certified or registered mail, return receipt requested, 72 hours after such communication is deposited in the mails with first-class postage prepaid, addressed as aforesaid, or (iv) by Federal Express or other nationally recognized overnight delivery service, on the next Business Day after such communication is deposited with such delivery service. All notices sent by facsimile transmission shall be conclusively determined to have been provided if (a) a confirmation report of such transmission is retained by the sender, (b) such confirmation report does not indicate a malfunction in transmission and (c) a copy of such notice is mailed to the intended recipient by certified mail, return receipt requested, Federal Express or other recognized overnight courier within one Business Day of its facsimile transmission.

8. <u>Miscellaneous</u>. This Agreement shall constitute the entire agreement of the parties with respect to the subject matter hereof and shall supersede all prior agreements, correspondence and other materials relating to such subject matter. This Agreement may only be modified by a written instrument signed by Lender and Borrower. All determinations made by Lender under this Agreement shall be final and conclusive, absent manifest error.

9. <u>Governing Law; Jurisdiction and Venue</u>. This Agreement shall be governed by the laws of the State of New York. Borrower hereby waives any right that it may have to a trial by jury in any action brought on this Agreement or in any way connected with or related to this Agreement. Borrower and, by its acceptance hereof, Lender agrees that any legal proceeding relating to this Agreement shall be maintained in a state or United States court of competent jurisdiction sitting in the City and State of New York. Lender and Borrower hereby consent and submit themselves to the jurisdiction of the state and the United States courts of New York for the purposes of the adjudication of such legal proceedings.

10. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument. Facsimile signatures to this Agreement, the Determination Notice and any notices provided hereunder shall constitute originals.

Very truly yours,

By: _____
Name: Seth Kincaid
Title: President/CEO

Facsimile Number:

(803) 762-4800

## GUARANTY

The undersigned ("Guarantor"), as a primary obligor and not merely as a surety, for consideration received, hereby absolutely, unconditionally and irrevocably guarantees to Lender, the prompt, unconditional and complete payment of all sums that become due and payable by Borrower under the above Extended Rate Lock Agreement and the Letter (collectively, the "Agreement") including, but not limited to, any amounts payable pursuant to the last sentence of Section 4(b) of the Agreement and any Rate Lock Fees. It is expressly understood and agreed to that this is a continuing guaranty and that all obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity or enforceability of the Agreement, which Guarantor hereby acknowledges having reviewed. Guarantor agrees that it will reimburse Lender within one (1) Business Day of Lender's demand for all expenses (including, but not limited to, reasonable counsel fees and disbursements) incurred by Lender in connection with the collection against Borrower of all the sums owed by Borrower pursuant to the Agreement and in connection with the enforcement of this guaranty. Guarantor hereby waives notice of the acceptance hereof, presentment, demand for payment, protest, notice of protest, or any and all notice of non-payment, non-performance or non-observance, or other proof, or notice or demand. Guarantor agrees that the validity of this guaranty and Guarantor's obligations hereunder shall not be terminated or impaired (a) by the assertion by Lender of any rights or remedies under or with respect to the Agreement or the Letter, or any failure or delay in the exercise of such rights, (b) by reason of the release or discharge of Borrower or any other party of its obligations under the Agreement or the Letter, (c) by reason of the commencement of any bankruptcy or similar case against Borrower or any other party, or (d) by reason of any payment made on the obligations guaranteed hereunder having to be refunded pursuant to any bankruptcy or insolvency law; it being understood that no payment so refunded shall be considered payment of any portion of the obligations guaranteed hereunder or have the effect reducing Guarantor's obligations hereunder. If more than one party shall execute this guaranty, the obligations of each such party shall be joint and several. The failure of any party to execute this guaranty, or any counterpart hereof shall not relieve the other signatories from their obligations hereunder. This guaranty may only be amended or waived by a written instrument executed by Lender. All understandings and agreements heretofore had by Guarantor with respect to this guaranty are merged into this guaranty, which alone fully and completely expresses the agreement of Guarantor. This guaranty may be executed in counterparts. Facsimile signatures shall constitute originals. This guaranty shall be governed by the laws of the State of New York. Guarantor hereby waives any right that it may have to a trial by jury in any action brought on this guaranty or in any way connected with or related to the Agreement or the Letter. Each of Guarantor and, by its acceptance hereof, Lender agrees that any legal proceeding relating to this guaranty, the Agreement or the Letter shall be maintained in a state or United States court of competent jurisdiction sitting in the City and State of New York. Lender and Guarantor hereby consent and submit themselves to the jurisdiction of the state and the

United States courts of New York for the purposes of the adjudication of such legal proceedings. All capitalized terms not defined in this guaranty shall have the meanings ascribed to them in the Agreement.

GUARANTOR:

_____
Seth Kincad

## SCHEDULE 1

| | |
|---|---|
| Rate Lock Loan Amount: | $3,300,000 |
| Rate Lock Payment: | $66,000 |
| First Decrease Amount: | 20 basis points |
| Additional Decrease Amount: | 10 basis points |
| Additional Rate Lock Payment Amount | $33,000 |
| Attention Party: | Edmund Moy / John Ng |
| Rate Lock Expiration Date: | The 90th day following the determination of the Rate (or, if such day is not a Business Day, the immediately preceding Business Day). |
| Lender's Facsimile Number: | (646) 758-5374 / (646) 758-3860 |
| Lenders's Account for Wire Transfers: | Chase Manhattan Bank<br>New York, New York<br>ABA 021 000 021<br>Account Name: Lehman Brothers Bank, FSB<br>Account Number: 066-614287<br>Attention: Edwin Mejia<br>Re: Store It Holiday |
| Rate Lock Fee: | $577.50 per day, payable in advance in installments of $8,662.50. Such installment payments represent advance payments of the Rate Lock Fees which may accrue hereunder for the fifteen (15) day period commencing on the date such payments are due. The first such installment shall be due on the date the Rate Lock Fee first accrues, and each subsequent payment shall be due on each fifteenth (15th) day thereafter (each such due date shall be referred to herein as a "Rate Lock Fee Due Date"). Any provision set forth herein for the accrual of any Rate Lock Fees or the making or acceptance of Rate Lock Fees after the Rate Lock Expiration Date shall not constitute the extension of the Rate Lock Expiration Date. |
| Rate Lock Premium: | Borrower may elect, in lieu of paying Rate Lock Fees in accordance with this Agreement, to have the Rate increased at closing by one basis point for each Rate Lock |

|  |  |
|---|---|
|  | Fee Due Date occurring from and after the date hereof through and including the closing of the Loan. In the event that the Loan shall not close prior to the termination of all Hedges, Borrower shall pay Lender the amount of all Rate Lock Fees that Borrower would have been obligated to pay Lender in the absence of the election set forth in this paragraph. |
| Commencement Date for Payment of Rate Lock Fee: | The Rate Lock Fee shall begin to accrue on the 61st day following determination of the Rate. Accordingly, Borrower and Lender agree that the words "the 61st day following" are hereby inserted between the words "on" and "the date of determination of the Rate" in clause (i) of Section 2 of this Agreement. |

## SCHEDULE 2

## DETERMINATION NOTICE

VIA FACSIMILE TO (646) 758-5374 / (646) 758-3860
LEHMAN BROTHERS BANK, FSB
399 Park Avenue, 8th Floor
New York, New York 10022
Attention: Edmund Moy / John Ng

    Re:    Rate Lock Agreement for Store It Holiday

Gentlemen:

    Reference is made to the above referenced Extended Rate Lock Agreement. All capitalized terms shall have the meanings described therein. This shall confirm our agreement that the Rate shall be in the following amounts:

    Rate: _____%
    Rate Lock Amount: $3,300,000
    Date of Determination: _____.

Very truly yours,

By: _____
    Name:
    Title:

Store It Holiday

# Exhibit C

Oct 04 2007 9:58AM  Just Store It!  423-926-1031  p.41

## SCHEDULE 2

## DETERMINATION NOTICE

VIA FACSIMILE TO (646) 758-5374 / (646) 758-3860
LEHMAN BROTHERS BANK, FSB
399 Park Avenue, 8th Floor
New York, New York  10022
Attention: Edmund Moy / John Ng

Re:   Rate Lock Agreement for Store It Holiday

Gentlemen:

Reference is made to the above referenced Extended Rate Lock Agreement. All capitalized terms shall have the meanings described therein. This shall confirm our agreement that the Rate shall be in the following amounts:

Rate: 6.46%
Rate Lock Amount: $3,300,000
Date of Determination: 06/19/07

Very truly yours,

By: _____
Name: Seth Rinzewind
Title: President/CEO

Store It Holiday

# Exhibit D

Oct 04 2007 9:58AM  Just Store It!  423-926-1031  p.43

**LEHMAN BROTHERS BANK, FSB**
399 Park Avenue
New York, New York 10022

COMMITMENT

Date of Commitment: August 7, 2007

Store It, GP
c/o Kincaid Group LLC
PO Box 3934
Johnson City, TN 37602
Attention: William Ralph Kincaid

Re:   Application ("Application") dated June 12, 2007 made by Seth Kincaid to Lehman Brothers Bank, FSB with respect to property located at 2262 US 19, Holiday Florida, commonly known as Stor It Holiday (the "Property")

Ladies and Gentlemen:

Reference is made to the above Application. All capitalized terms not defined herein shall have the meanings ascribed to them in the Application.

Lender hereby agrees to make, and Borrower agrees to accept, the Loan on the terms, and subject to the conditions, set forth in the Application, subject to the following modified or additional terms and conditions:

See Exhibit A

Borrower shall be required to deposit with Lender $30,500 as an additional "Deposit" under the Application as a condition to the effectiveness of this Commitment.

Lender may terminate this Commitment if Lender determines that any of the following shall have occurred: (i) any suspension of trading, disruption or material adverse change, or any development involving a prospective material adverse change, in or affecting the capital markets generally or any of the corporate bond, interest rate swaps or commercial mortgage backed securities markets in particular; (ii) any suspension or limitation of trading in securities generally on the New York Stock Exchange, NASDAQ, the American Stock Exchange or any setting of minimum prices for trading on any such exchange; (iii) any banking moratorium declared by Federal, New York or Delaware authorities; or (iv) any outbreak or escalation of major hostilities in which the United States is involved, any declaration of war by Congress or any other substantial national or international calamity or emergency.

Stor It Holiday Commitment.doc

This Commitment shall not be effective or binding upon Lender unless the following occur on or prior to the third (3rd) Business Day after the date of this Commitment: (1) this Commitment is countersigned by Borrower in the space provided below and received by the "Attention Party" at Lender set forth below, and (2) the Good Faith Deposit and other payments required to be paid to Lender hereunder or under the Application in connection with this Commitment are paid, by wire transfer of immediately available funds to the account set forth below.

The Commitment shall terminate as of the date set forth in the Application.

Very truly yours,

**LEHMAN BROTHERS BANK, FSB**

By: _____
Name: John Herman
Title: Managing Director

Lender's Account for Wire Transfers:

Chase Manhattan Bank
New York, New York
ABA 021 000 021
Account Name: Lehman Brothers Bank, FSB
Account Number: 066-614287
Attention: Edwin Mejia
**Re: Stor It Holiday**

Acknowledged and Agreed to:

By: _____
Name: Seth Rinegarl
Title: President/CEO

Under Protest, All Rights Reserved.

# Exhibit E



Oct 04 2007 9:59AM    Just Store it!    423-926-1031    p.47

**LEHMAN BROTHERS BANK, FSB**
399 Park Avenue,
8th Floor
New York, NY 10022

**BY FACSIMILE, EMAIL AND OVERNIGHT MAIL**

September 19, 2007

Kincaid Group LLC
P.O. Box 3934
Johnson City, TN 37602
Attention: William Ralph Kincaid

> Re: Application/Commitment Letter ("Application) dated June 12, 2007 made by Seth Kincaid, on behalf of property owner ("Borrower") to Lehman Brothers Bank, FSB with respect to property located at 2262 US 19, Holiday, Florida, commonly known as Store It Holiday (the "Property"); Rate Lock Agreement dated as of June 15, 2007 and related Guaranty executed by Seth Kincaid (the "Rate Lock Agreement")

Gentlemen:

Reference is made to the Application and to the Rate Lock Agreement. All capitalized terms not defined herein shall have the meanings ascribed to them in the Application and the Rate Lock Agreement.

At approximately 4:20 p.m. on September 11, 2007, Edmund Moy sent you an email that summarized our legal position with respect to this transaction and outlined the terms and conditions upon which we were willing to move forward towards closing. In response to our email, we received several emails from your attorney, Ken Catanzarite, that were unacceptable to us, and which we interpreted to be a rejection of our September 11 proposal. Mr. Moy confirmed this fact though emails to Mr. Catanzarite on the evening of Wednesday, September 12, and the morning of Thursday, September 13. In his September 13 email, Mr. Moy advised you that we were evaluating our options.

We have decided that we do not wish to proceed any further with respect to a financing of the Property. In accordance with our rights under the Rate Lock Agreement, we have terminated all Hedges, and have incurred Hedge Losses of $193,215.

Set forth on Exhibit A to this letter is a summary of all deposits made by or on behalf of the Borrower and all losses, costs and expenses incurred by us pursuant to the Application and the Rate Lock Agreement. As you will see, there is a net sum of $36,955 owed to us pursuant to the Application and the Rate Lock Agreement. Please pay such sum to us within one (1) Business

Day of the date hereof. If payment is not made to us, we intend to pursue our available remedies against all responsible parties, including the Borrower and Seth Kincaid.

Very truly yours,

Lehman Brothers Bank, FSB

By: _____
Name: John Herman
Title: Managing Director

cc:  Kenneth Catanzarite, Esq.

Mr. Seth Kincaid

William Olshan, Esq.
Senior Vice President
Office of the General Counsel
Lehman Brothers Inc.

2

## Exhibit A

A. <u>Sums Paid By or On Behalf of Borrower</u>:

| | | |
|---|---|---|
| 1. | Deposit Pursuant to Application: | $ 26,500 |
| 2. | Rate Lock Payments | $160,000 |
| | Total Sums Paid: | $186,500 |

B. <u>Hedge Losses and Expenses Incurred</u>:

| | | |
|---|---|---|
| 1. | Appraisal | $ 6,000 |
| 2. | Engineering Report | $ 2,100 |
| 3. | Environmental Report | $ 2,000 |
| 4. | Legal Fees and Expenses | $ 13,000 |
| 5. | PZR Zoning | $ 640 |
| 6. | Underwriting | $ 6,500 |
| 7. | Hedge Losses | $193,215 |
| | Total Hedge Losses and Expenses: | $233,455 |

NET SUM OWED TO LENDER:   $ 36,955